1
2
3
4
5
6
7 # UNITED STATES DISTRICT COURT
8 ## EASTERN DISTRICT OF CALIFORNIA
9
10 ANTHONY E. MACK,                      CASE NO.     1:04-cv-05787-LJO-MJS (PC)

11        Plaintiff,                      COMPLAINT DISMISSED WITH LEAVE TO
12                                        AMEND
      v.
13                                        (ECF No. 22)
M. K. WITCHER, et al.,
14                                        SECOND AMENDED COMPLAINT DUE
          Defendants.                     WITHIN THIRTY DAYS
15
16 _____/
17
18                    **SECOND SCREENING ORDER**
19 **I.     PROCEDURAL HISTORY**
20        Plaintiff Anthony E. Mack ("Plaintiff") is an inmate in the custody of the California
21 Department of Corrections and Rehabilitation and is proceeding pro se and in forma
22 pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff originally filed this
23 action on June 1, 2004.  (ECF No. 1.)  The Court found that Plaintiff failed to state a
24 cognizable claim and granted him leave to amend on May 28, 2009.  (ECF No. 14.)  After
25 multiple extensions of time, Plaintiff filed an amended complaint on October 23, 2009.
26
27

                                        1

(ECF No. 22.)  No other parties have appeared in this action.

It is this First Amended Complaint that is now before the Court for screening.  For the reasons set forth below, the Court finds that Plaintiff has failed to state a claim upon which relief may be granted.

## II.    SCREENING REQUIREMENTS

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555).  While factual allegations are accepted as true, legal conclusions are not.  Iqbal, 129 S.Ct. at 1949.

## III.    SUMMARY OF FIRST AMENDED COMPLAINT

2

Plaintiff brings this action for retaliation, conspiracy, denial of access to courts, violations of due process rights, and emotional distress in violation of the California Civil Code. Plaintiff names the following individuals as Defendants: M. K. Witcher, Associate Warden; M. Yarborough, Warden; W. J. Sullivan, Chief Deputy Warden; D. Chapman, Correctional Counselor II/Lieutenant; A. Lopez, Captain; K. E. Todd, Associate Warden; J. Hughes, Sergeant; J. Kabler, Correctional Counselor; T. Traynham, Lieutenant; D. Zanchi, Hearing Officer; J. L. Peterson, Hearing Officer; M. Tyson, Hearing Officer, J. D. Ramos, Hearing Officer; E. Bull, Hearing Officer; M. Stainer, Hearing Officer; W. D. Nelson, Hearing Officer; D. J. Falkner, Hearing Officer; Herb Huebner, Litigation Coordinator; T. Peterson, Legal Officer; R. Redelsperger, Intake Property Officer; S. Diaz, Segregation Property Officer; B. Aguilar, Segregation Property Officer; M. Robinson, Intake Property Officer; J. Temperio, Correctional Officer; R. Rednius, Correctional Officer; Thomas S. Durham, Correctional Officer; D. Martinez, Officer; S. Buentiempo, Officer; K. Barr, Officer; N. Sanchez, MTA Officer; T. Pull, Officer; S. Brass, Officer; J. Knudson, Officer; L. Haviland, Appeal Coordinator; and F. Schmidt, Appeal Coordinator. All above named Defendants worked at Tehachapi State Prison ("TSP") where the events occurred.

Plaintiff names the following individuals as Defendants as well but does not specify where they were employed: J. Garza, Sergeant; J. J. Cortez, Correctional Captain III; R. Hargrove, Correctional Captain III; L. Luu, Correctional Captain III; Nola Grannis, Chief of Inmate Appeals; Linda Rianda, Chief of Inmate Appeals; Troy Lofton, Chief of Inmate Appeals; Hernandez, Sergeant; and J. Pitko, ISU Captain.

Plaintiff's alleges that during the period May 14, 2001 to July 10, 2003, Defendants routinely subjected him to retaliation for filing multiple grievances and actions against

3

prison officials.  The following is a condensed version of Plaintiff's detailed and seemingly endless statement of facts and complaints.

On May 14, 2001, Plaintiff was transferred from Salinas Valley State Prison to TSP. At TSP, Plaintiff was wrongfully housed in the Secured Housing Unit ("SHU").  He had housing committee appearances on May 24, 2001 and May 31, 2001 and filed grievances objecting to his housing status after each hearing.  He was then released to the general population.  During a committee appearance, Defendant Witcher told Plaintiff that he knew about his legal activities and that Plaintiff would not be allowed single-cell status anymore.

On June 1, 2001, Plaintiff tried to retrieve his belongings from Receiving and Release ("R&R") pursuant to a directive issued by prison official Shilay.  Defendant Hughes told Plaintiff that he was not going to get his property and made threatening comments about Plaintiff "snitching" on officers.  Hughes then called Defendant Chapman and informed her of the situation.  On June 2, Plaintiff filed a grievance about this episode; it was destroyed and/or never returned to him.

On June 12, 2001, Plaintiff appeared before the committee for program assignment. Defendants Witcher and Chapman were both on the committee.  They told him they had heard of his complaints, and they then retaliated by revoking his single-cell status. Defendants also informed him that if he could find a cellmate, he could retrieve his belongings.  Later that same day, Plaintiff again attempted to retrieve his belongings. However, he was turned away from R&R by Defendant Ball who said that Defendant Hughes needed to see him.  In Defendant Hughes's office, Plaintiff found Defendants Hughes, Hernandez, Doe, and Chapman.  Defendants again advised  Plaintiff that he would never receive his belongings unless he found a cellmate.  After the shift change,

4

Plaintiff again attempted to retrieve his property.   Defendant Redelsperger informed Plaintiff that Defendants Hughes and Hernandez had instructed that Plaintiff not be allowed to retrieve his belongings.  Plaintiff returned to the R&R at the third shift and asked for his property.   Defendant Chapman came out and threatened him with administrative segregation and physical harm.  On June 13, Plaintiff filed a grievance about this episode.

On June 14, 2001, Defendant Chapman screamed at, threatened, and pushed Plaintiff.  Plaintiff filed a grievance for this episode on June 18.

On June 19, 2001, Plaintiff received his belongings.

Between June 12 and July 10, 2001, Defendant Chapman sent possible cellmates to Plaintiff's cell.   Between June 26 and July 31, Plaintiff had two cellmates, both incompatible.  On June 26, Plaintiff filed a grievance concerning the lack of cell space and the illegal double-celling of unwilling inmates among other things.   On July 11, 2001, Defendants Chapman and Traynham asked Plaintiff about his June 18 and June 26 grievances and then destroyed them.

On August 6, 2001, Plaintiff was summoned by Defendant Redelsperger to R&R to speak with Defendant Hughes. Defendant Hughes asked Plaintiff about another grievance and threatened him.

On August 8, 2001, Plaintiff was moved to a different cell block for the purpose of being harassed by Defendant Knudson.  Defendant Knudson failed to open Plaintiff's cell door multiple times.  On August 13, Plaintiff filed a grievance with Defendant Knudson, and it was destroyed.  On August 14, officers surrounded Plaintiff and put him in restraints and placed him in a holding cell for allegedly refusing to lock up.  On August 19 through August 21, Defendant Knudson refused to open Plaintiff's cell door.  Plaintiff told several other

Defendants, but no action was taken.

On August 22, 2001, after a confrontation in the yard, Defendant Knudson alleged that he felt threatened by Plaintiff.  Plaintiff was placed in restraints and taken to a holding cell.  All of Plaintiff's property was inventoried and placed in R&R for storage.  Plaintiff was transferred to SHU and charged with disruptive behavior with a potential for violence, not an offense meriting being sent to SHU.  Defendant Zanchi performed the 72-hour lock up order review and refused to release Plaintiff.  Defendant Chapman reclassified the incident as threatening staff, an offense that can result in confinement in SHU.

On August 26, 2001, Defendant Knudson began working in administrative segregation ("ad-seg").  Defendants Knudson, Durham, and Rednius verbally abused Plaintiff.  Plaintiff filed a grievance on August 28.  It was destroyed.

On August 29, 2001, Plaintiff appeared before prison official Shilay, Defendant Chapman, and Defendant Witcher for a housing classification hearing.  On August 31, Plaintiff spoke with Defendant Peterson about receiving his legal materials from R&R.  She told him that he should not have crossed Defendant Chapman and that if he crossed her (Peterson), she would wreck his life.  On September 10, Plaintiff received his materials.  During the month of September, Peterson, who handed out legal mail, made many more threats to Plaintiff.

On September 26, 2001, Plaintiff was brought before the hearing committee for ad-seg review.  The committee decided to keep him in ad-seg.  On September 27, Plaintiff was found guilty by Defendant Tyson of threatening Defendant Knudson.

On October 2, 2001, Defendant Peterson brought legal mail to Plaintiff.  However, upon opening it and finding a letter and a magazine, she deemed it contraband and

6

confiscated it.   On October 3, Plaintiff and Defendant Peterson had another verbal confrontation.  Plaintiff filed a grievance against Defendant Peterson.  This grievance was screened out by Defendant Haviland in retaliation.   On October 5, Defendant Peterson falsely charged Plaintiff with circumventing the legal mail procedure.

On October 9, 2001, Plaintiff spoke with Defendant McLaughlin about an upcoming deposition regarding a previously-filed grievance.  Defendant McLaughlin warned Plaintiff that Defendant Yarborough had asked about him, that everyone knew Plaintiff from his previous legal actions, and that Plaintiff should watch what he said and did.  Plaintiff filed a grievance against Defendant McLaughlin.  This grievance was kept or destroyed by Defendants.

On October 24, 2001, Plaintiff was given nine months in SHU by Defendants Todd and Nelson.

On October 26, 2001, Plaintiff was having a conversation with another inmate about filing grievances against prison officials.  Defendants Rednius, Martinez, and Peterson overheard this conversation and a verbal confrontation between Plaintiff and Peterson ensued.   Plaintiff was told that he had to find a cellmate.   Plaintiff claimed to be incompatible with two inmates, and was then denied yard that afternoon and charged with refusing a cellmate.  Plaintiff's yard privileges were suspended pending adjudication.  Later that same day, Plaintiff's cell was searched by Defendants Peterson and Martinez with the help of Defendant Brass.   When Plaintiff was returned to his cell after the search, he discovered that the grievance he was writing about Defendants Peterson and Rednius was missing.  On November 1, Defendant Martinez issued Plaintiff a  disciplinary infraction for over-familiarity.

7

On October 30, 2001, Plaintiff filed a grievance, which was kept or destroyed by officials. Also on October 30, there was a confrontation between Plaintiff and Defendants Rednius and Peterson at the law library. Peterson charged Plaintiff with delaying a peace officer.

On October 31, 2001, Plaintiff had another confrontation with Defendants Rednius and Durham regarding Plaintiff's treatment of the female staff. On November 1, Plaintiff wrote a grievance for both the law library incident and the confrontation about the female staff. Plaintiff gave these grievances to Defendant Huebner, who said he would file them with the appeals office. Plaintiff never received anything in return.

On November 8, 2001, Plaintiff had several verbal confrontations with different Defendants including Durham, Rednius, Martinez, Traynham, and Witcher. The following day, Plaintiff was interviewed by prison official Shilay, who said because errors had occurred, a classification hearing would be scheduled to rescind the SHU term and reduce the charges to disobedience.

On November 15, 2001, Plaintiff's cell was searched and Defendant Dessenberger confiscated drawings she perceived to be of Defendant Martinez. Plaintiff was again written up for over-familiarity. A hearing was held by Defendant Traynham on November 18 regarding the over-familiarity charges. Even thought Plaintiff did not receive a copy of the I.C. report 24 hours prior to the the hearing as required by prison regulations, the hearing was held. Plaintiff was found guilty.

On November 19, 2001, when Plaintiff was scheduled  to go to a committee classification hearing, Defendant Traynham decided to move him from B Yard to A Yard. Plaintiff was told to pack his belongings. Plaintiff demanded to speak with superiors.

Defendant Traynham said that he and Defendant Witcher wanted Plaintiff moved and that the decision was final.  While waiting to be moved, Defendants Rivera and Gant appeared. Defendant Rivera stated that she was there to read Plaintiff his rights because a knife was found in his stored property.  Plaintiff was charged with possession of a weapon.  Plaintiff stated that it was planted there by one of the following Defendants Redelsperger, Hughes, Rednius, Durham, Peterson, Tempiero, Smith, or Thomas.

On November 20, 2001, Plaintiff was sent to A Yard where he found his cell very cold and the heater broken.  He alerted staff, but no action was taken.  Plaintiff filed a grievance about this issue on December 6.  Plaintiff was housed in this cell for two months.

On December 11, 2001, the charge from the August 22 incident was changed to disobedience, a charge that does not merit a SHU term.  However, during a committee hearing on December 18, Plaintiff was determined to be a safety and security risk and was therefore required to remain in SHU.  Plaintiff continued to object to being housed in SHU, believing instead that he should be housed in ad-seg.

Defendant Diaz spoke with Plaintiff about belongings forbidden in SHU.  Defendant Diaz gave him the option of either donating the items or sending them home.  Plaintiff argued that there was a mistake, that  he should not be classified as SHU, but as ad-seg. Plaintiff referred Defendant Diaz to speak with Defendant Buentiempo to back up his statement.  At a later time, Defendant Diaz again attempted to have Plaintiff make a decision regarding his belongings.  He said he spoke with Defendant Buentiempo and Defendant Stainer and both  told him that Plaintiff was going to receive another SHU term, so Defendant Diaz should get rid of Plaintiff's belongings.  A box of legal documents was missing.  On January 2, 2002, Defendants Robinson and Diaz mailed Plaintiff's property;

however, the boxes never reached the intended destination.  In response, Plaintiff filed three grievances.  They were denied, partially granted, and never returned.

On December 23, 2001, Plaintiff was found guilty of the weapons charge. Defendant Todd ordered that the charge be reheard.

Plaintiff wrote several grievances and letters to his family about prison officials' conduct with regard to the property issue and the weapons charge.  Defendant Chapman and Plaintiff had a verbal confrontation about this and eventually this lead to an investigation into Plaintiff's missing property.

On February 4, 2002, Defendant Barr gave Plaintiff a chrono charging him with immoral conduct.  The charge was made by Defendant Buentiempo.  This led to a verbal confrontation with Defendant Barr.  Plaintiff then wrote Defendant Buentiempo a 602 request for interview alleging that she intentionally endangered Plaintiff and would be sued. On February 6, Defendant Buentiempo alleged that Plaintiff threatened her.  During a committee hearing the following day, Defendant Todd told Plaintiff that she had told Defendant Buentiempo to write him up for threatening staff.

On February 23, 2002, Plaintiff was told to cell up with an inmate by Defendant Moose.  Both inmates concluded that they were incompatible.  Defendant Moose wrote Plaintiff up for disobeying an order, and Defendant Garza suspended his yard privileges.

On March 1, 2002, Plaintiff was told he was going to be moved again because Defendant Martinez had been assigned to work in Plaintiff's current housing in A Yard. Plaintiff objected to the move.  Defendants Garza, Lopez, and Zanchi were there to extract him if necessary.  Defendant Garza planted a razor blade in Plaintiff's property and told Plaintiff to get ready to face more weapons charges.  Plaintiff filed grievances in relation

10

to this.  Plaintiff's missing box of legal documents was apparently found and looked through, but Defendants would not release it to Plaintiff.  Plaintiff filed grievances in relation to this.

On March 3, 2002, Defendant Martinez was again reassigned to B Yard where Plaintiff was being housed.

On March 5, 2002, Defendant Peterson wrote up disciplinary charges against Plaintiff alleging that he had threatened her sexually.

The weapons charge was reheard on March 6 and Plaintiff was found guilty of a lesser charge.  Also on this date, Plaintiff's library access was suspended

On March 10, 2002, Defendant Barr wrote a disciplinary report claiming that Plaintiff had masturbated.

On March 19, 2002, Defendant Zanchi found Plaintiff guilty of the "threatening staff" charge made by Defendant Buentiempo.

On April 1, 2002, Plaintiff was charged with masturbating or indecent exposure by Defendant Sanchez.  On April 12 and May 26, hearings were held on the charges of threatening and indecent exposure, respectively.  Plaintiff was found guilty of both.

On April 6, 2002, a hearing was held by Defendant Ramos on the masturbation/ indecent exposure charge.  Plaintiff was found guilty.

On May 8, 2002, Defendants Kabler, Marshall, Witcher, Sullivan, and Todd imposed a SHU term.

On May 22, Defendants refused to give Plaintiff credit for time served in segregation pending adjudication.

In June and July, Plaintiff continued to object to his SHU term and filed complaints.

11

Defendants informed Plaintiff that his SHU term was indefinite.

On December 5, 2002, when Plaintiff's SHU term expired, Defendants Tyson and Trayham issued a new order for Plaintiff to be held for indeterminate status.  On January 29, 2003, Plaintiff received the indeterminate SHU sentence.

On July 9, 2003, Plaintiff was released from SHU after serving twenty-three months.

Plaintiff seeks declaratory judgments, permanent injunctions, nominative damages, punitive damages, compensatory damages, costs and fees.

**IV.   ANALYSIS**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws."  Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotations omitted).

**A.   Retaliation**

Plaintiff states that he was being retaliated against by Defendants for exercising his constitutional rights.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably

advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Filing a grievance is a protected action under the First Amendment. Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989).   Being moved to the SHU, being deprived of personal property, and having false charges filed are adverse actions. See Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005) (arbitrary confiscation and destruction of property, initiation of a prison transfer, and assault in retaliation for filing grievances); Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) (retaliatory placement in administrative segregation for filing grievances); Hines v. Gomez, 108 F.3d 265, 267(9th Cir. 1997) (retaliatory issuance of false rules violation and subsequent finding of guilt); Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (retaliatory prison transfer and double-cell status in retaliation); Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989) (inmate labeled him a snitch and approached by other inmates and threatened with harm as a result); Rizzo v. Dawson, 778 F.2d 527, 530-32 (9th Cir. 1985) (retaliatory reassignment out of vocational class and transfer to a different prison).   Thus, Plaintiff has alleged facts sufficient to meet the first prong of a retaliation claim.

The second and third elements of a prisoner retaliation claim focus on causation and motive. See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009).  A plaintiff must show that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct." Id. (quoting Morgan, 874 F.2d at 1314).  Although it can be difficult to establish the motive or intent of the defendant, a plaintiff may rely on circumstantial evidence. Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003) (finding that a prisoner established a triable issue of fact regarding prison officials' retaliatory motives by raising

issues of suspect timing, evidence, and statements); <u>Hines v. Gomez</u>, 108 F.3d 265, 267-68 (9th Cir. 1997); <u>Pratt v. Rowland</u>, 65 F.3d 802, 808 (9th Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory intent").  Plaintiff alleges that multiple Defendants told him that they were taking certain actions (e.g., destroying his grievances, requiring Plaintiff to take a cellmate) because of his litigation activity.  Thus, Plaintiff has alleged facts sufficient to meet the second and third requirements of a retaliation claim.

With respect to the fourth prong, "[it] would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity . . . ." <u>Mendocino Envtl. Ctr. v. Mendocino County</u>, 192 F.3d 1283, 1300 (9th Cir. 1999).  The correct inquiry is to determine whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. <u>Rhodes</u>, 408 F.3d at 568-69 (citing <u>Mendocino Envtl. Ctr.</u>, 192 F.3d at 1300). It can not be said that Plaintiff's First Amendment rights were chilled; the actions of Defendants' certainly did not inhibit his continuous filing of  grievances.  However, the alleged actions of Defendants could be expected to chill or silence a person of ordinary firmness from pursuing First Amendment activities.  Thus, Plaintiff has met the fourth prong for a retaliation claim.

With respect to the fifth prong, a prisoner must affirmatively allege that "the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." <u>Rizzo</u>, 778 F.2d at 532.  This is not a high burden to reach. <u>See</u> <u>id.</u> (prisoner's allegations that search was arbitrary and capricious sufficient to satisfy this inquiry).  Plaintiff states that Defendants' collective

14

1  actions did not serve to advance any legitimate penological goal.  Therefore, Plaintiff has

2  satisfied the fifth prong of his retaliation claim.

3          While the various allegations in Plaintiff's Complaint collectively state facts which,

4  if true, could be said to satisfy each of the elements of a retaliation claim, the sheer

5  number and collective pleading of Plaintiff's complaint make it impossible for the Court to

6  determine whether any one set of facts/circumstances/events/complaints meets all five

7  criteria.  Stated quite clearly and simply, **Plaintiff's Complaint represents such a gross**

8

9  **disregard of both Rule 8(a) and Rule 18(a) that neither it nor any comparable**

10 **amendment of it may stand.**

11

12         Rule 8(a) requires a complaint to be a "short and plain statement of the claim

13 showing that the pleader is entitled to relief."  Rule 18 allows multiple claims against a

14 single party but does not allow Plaintiff to bring unrelated claims against different

15 defendants in the same action.  See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

16         Plaintiff violates both of these rules—in the extreme.  Thus, the Court will dismiss

17 Plaintiff's Complaint.

18

19         **The Court will give Plaintiff one more opportunity to amend but  the amended**

20 **complaint must comply with the following specific directions:**   A structure like that

21 in Plaintiff's current Complaint, i.e., a time-line of events that includes all facts without

22 showing if and how they may be linked together or how they relate to a specific claim,

23 cause of action, and  Defendant, will not be tolerated.  In his amended complaint, Plaintiff

24 must set forth a separate cause of action for each and every allegedly adverse action on

25 which he actually wants and expects to be considered for Federal Court relief (keeping in

26

27

mind that not every perceived slight is worthy of legal action even if legal action might technically be available and that too many complaints can detract from all, even the more serious).  Each and every cause of action should: 1. Describe only one adverse action Plaintiff suffered;  2. Include only the facts relating to that single adverse action; 3. Describe which particular Defendant(s) were directly responsible for that action and/or were personally involved in the particular retaliatory action;  4. Show how the retaliation was in response to Plaintiff's attempt to engage in a protected activity; 5. Explain how that retaliatory action did or would be expected to chill the exercise of first Amendment rights; and, 6. State why it is contended that the adverse action did not serve some legitimate penological interest.  In short, each cause of action in Plaintiff's amended complaint should focus on **one** particular act of retaliation and name **only** the Defendants personally involved in that act.

By way of illustration, Plaintiff's complaint might well prove more enlightening if, for example, Claim I related solely to the revocation of his single-cell status, identified the Defendants actually responsible for that revocation, stated the basis for the claim that the revocation resulted from Plaintiff undertaking a specified protected activity, set forth how the retaliation chilled or would be expected to chill  First Amendment activity, and how it served no legitimate penological interest.  Claim II might relate to the alleged destruction of Plaintiff's grievances, and include  statements as to how that action was causally related to or motivated by Plaintiff's protected activity, and how it chilled First Amendment activity and served no legitimate penological interest.  Plaintiff should follow this pattern for each adverse action that he can show was done in retaliation for engaging in a protected activity.

As Plaintiff endeavors to set forth the various causes of action, he must keep in

mind Rule 18(a)'s prohibition against bringing claims unrelated to each other in one action. Plaintiff can file separate lawsuits on each of the various claims, but in this action he must focus on **one set of events**, the claims arising out of those events, and the Defendants personally involved in those events.

**B.    Due Process**

Plaintiff appears to allege that his rights of due process were violated by Defendants Zanchi and Tyson on August 25, 2001 and September 27, 2001 when Plaintiff was not released from ad-seg and was found guilty of a false charge.

1.    Administrative Segregation

a.    Substantive Due Process

"To establish a violation of substantive due process . . . , a plaintiff is ordinarily required to prove that a challenged government action was clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare. Where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claims." Patel v. Penman, 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotations, and brackets omitted), overruled in part on other grounds as recognized by Nitco Holding Corp. v. Boujikian, 491 F.3d 1086 (9th Cir. 2007); County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998).  In resolving a Fourteenth Amendment substantive due process claim, the Court must balance "'several factors focusing on the reasonableness of the officers' actions given the circumstances.'"  White v. Roper, 901 F.2d 1501, 1507 (9th Cir. 1990)

17

(quoting Smith v. City of Fontana, 818 F.2d 1411, 1417 (9th Cir. 1987), overruled on other

grounds by Hodgers-Durgin v. de la Vina, 199 F.3d 1037 (9th Cir. 1999).

b.    Procedural Due Process

The Due Process Clause protects prisoners from being deprived of liberty without

due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to state a

cause of action for a due process deprivation, a plaintiff must first establish the existence

of a liberty interest for which the protection is sought.   "States may under certain

circumstances create liberty interests which are protected by the Due Process Clause."

Sandin v. Conner, 515 U.S. 472, 483-84 (1995).  Liberty interests created by state law are

generally limited to freedom from restraint which "imposes atypical and significant hardship

on the inmate in relation to the ordinary incidents of prison life."  Id. at 484.

The Due Process Clause alone creates no liberty interest in remaining in the general

prison population.  Hewitt v. Helms, 459 U.S. 460, 468 (1983) overruled on other grounds

by Sandin, 515 U.S. 472.  Prisoners may be housed in administrative segregation to

protect them from other inmates, to protect other inmates from the segregated prisoner,

or pending investigation of disciplinary charges, transfer, or re-classification.  Id.  The

allegation that a plaintiff was placed in administrative segregation does not in and of itself

state a claim for relief based on deprivation of due process.  May v. Baldwin, 109 F.3d 557,

565 (9th Cir. 1997) (convicted inmate's due process claim fails because he has no liberty

interest in freedom from state action taken within sentence imposed and administrative

segregation falls within the terms of confinement ordinarily contemplated by a sentence)

(quotations omitted); Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000).  The Ninth

Circuit has explicitly found that "administrative segregation falls within the terms of

18

confinement ordinarily contemplated by a sentence." Toussaint v. McCarthy, 801 F.2d 1080, 1091-92 (9th Cir. 1986), abrogated on other grounds by Sandin, 515 U.S. 472.

It appears from the statement of the case that Plaintiff was housed in ad-seg pending investigation of charges and re-classification and because of safety concerns. Plaintiff states that the actions were arbitrary and unreasonable, but does not include facts showing why or how.  He also fails to establish the existence of a liberty interest that was violated during his time in administrative segregation.  As stated above, the mere placement in administrative segregation does not state a cognizable claim for violation of Plaintiff's right to procedural due process.

c.   Analysis re Due Process

In alleging due process violations, Plaintiff merely states that Defendants' actions were arbitrary and unreasonable.  Such vague and purely conclusory allegations of a due process violation is not sufficient to state a claim.  Plaintiff must allege **facts** showing that the prison officials' actions were arbitrary and unreasonable.  Given that prison officials can have many legitimate reasons for the manner in which a particular prisoner is confined, it strikes the Court that it may be difficult for Plaintiff to state a cause of action arising out of the facts alleged and thus that Plaintiff might be better-advised to focus his and the Court's attention on his retaliation claims.  Nevertheless, the Court will give him one more opportunity to amend this claim if he chooses to do so notwithstanding the comments here.

2.   Property

Plaintiff appears to allege deprivation, confiscation, and/or damage to his property as a violation of his due process rights.  The Due Process Clause protects prisoners from being deprived of property without due process of law, Wolff, 418 U.S. at 556, and

19

prisoners have a protected interest in their personal property, <u>Hansen v. May</u>, 502 F.2d 728, 730 (9th Cir. 1974).  However, while an authorized, intentional deprivation of property is actionable under the Due Process Clause, <u>Hudson v. Palmer</u>, 468 U.S. 517, 532 n.13 (1984) (citing <u>Logan v. Zimmerman Brush Co.</u>, 455 U.S. 422, 435-36 (1982)); <u>Quick v. Jones</u>, 754 F.2d 1521, 1524 (9th Cir. 1985), neither negligent nor unauthorized intentional deprivations of property by a state employee "constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available," <u>Hudson</u>, 468 U.S. at  533.

California Law provides an adequate post-deprivation remedy for any property deprivations. <u>See</u> Cal. Gov't Code §§ 895; <u>Barnett v. Centoni</u>, 31 F.3d 813, 816-17 (9th Cir. 1994).  California's Tort Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board, formerly known as the State Board of Control, no more than six months after the cause of action accrues.  Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2 (West 2006).  Presentation of a written claim, and action on or rejection of the claim, are conditions precedent to suit. <u>State v. Superior Court of Kings County (Bodde)</u>, 90 P.3d 116, 123 (2004); <u>Mangold v. California Pub. Utils. Comm'n</u>, 67 F.3d 1470, 1477 (9th Cir. 1995).  To state a tort claim against a public employee, a plaintiff must allege compliance with the Tort Claims Act. <u>State v. Superior Court</u>, 90 P.3d at 123; <u>Mangold</u>, 67 F.3d at 1477; <u>Karim-Panahi v. Los Angeles Police Dept.</u>, 839 F.2d 621, 627 (9th Cir. 1988).

Plaintiff claims that his belongings were held, lost, damaged, and/or never returned.  Plaintiff fails to offer proof of compliance with the California Tort Claims Act; without same, he has failed to allege facts sufficient to find a violation of his due process rights.  The

Court will grant Plaintiff leave to amend his complaint on this claim but cautions Plaintiff that there is little point in doing so unless he can show compliance with the California Tort Claims Act.

### C. Conspiracy

Plaintiff repeatedly states that Defendants conspired against him.  A conspiracy claim brought under Section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)).  "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'"  Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

The federal system is one of notice pleading, and the Court may not apply a heightened pleading standard to Plaintiff's allegations of conspiracy.  Empress LLC v. City and County of San Francisco, 419 F.3d 1052, 1056 (9th Cir. 2005); Galbraith v. County of Santa Clara, 307 F.3d 1119, 1126 (2002).  However, although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ."  Twombly, 127 S.Ct. at 1965 (citations omitted).  A plaintiff must set forth "the grounds of his entitlement to relief[,]" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ."  Id. at 1964-65 (internal quotations and citations omitted).  As such, a bare allegation that defendants

21

conspired to violate plaintiff's constitutional rights will not suffice to give rise to a conspiracy claim under section 1983.

Plaintiff offers only the repeated allegation of conspiratorial conduct.  He alleges no facts showing a meeting of the minds or the sharing of a common objective between any of the Defendants.  Thus, this claim fails.  The Court will give Plaintiff leave to amend.

## D.   Denial of Access to Courts

Plaintiff alleges that Defendants denied him access to the courts.

Inmates have a fundamental constitutional right of access to the courts.  Lewis v. Casey, 518 U.S. 343, 346 (1996).  However, the right is limited to direct criminal appeals, habeas petitions, and civil rights actions.  Id. at 354.  Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim).  Christopher v. Harbury, 536 U.S. 403, 412-15 (2002).  Forward-looking claims allege "that systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time."  Christopher, 536 U.S. at 413.  In these cases that have yet to be litigated, "the justification for recognizing that [forward-looking] claim, is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed."  Id.  As part of the requirement to plead an injury, a plaintiff must allege that "a nonfrivolous legal claim had been frustrated or was being impeded."  Lewis, 518 U.S. at 353; see also Christopher, 536 U.S. at 415.  Simply stating that a claim is "nonfrivolous" due to the action of a government official will not satisfy the actual injury requirement.  Christopher, 536 U.S. at 415.  Rather, the nonfrivolous "underlying cause of action and its lost remedy must be addressed by

22

allegations in the complaint sufficient to give fair notice to a defendant." Id. at 416.  The

plaintiff must describe this "predicate claim . . . well enough to apply the 'nonfrivolous' test

and to show that the 'arguable' nature of the underlying claim is more than hope." Id.  The

complaint should "state the underlying claim in accordance with Federal Rule of Civil

Procedure 8(a) just as if it were being independently pursued, and a like plain statement

should describe any remedy available under the access claim and presently unique to it."

Id. at 417-418; see Lewis, 518 U.S. at 353 n. 3 ("Depriving someone of an arguable

(though not yet established) claim inflicts actual injury because it deprives him of

something of value-arguable claims are settled, bought and sold.  Depriving someone of

a frivolous claim, on the other hand, deprives him of nothing at all, except perhaps the

punishment of Rule 11 sanctions.").

When a prisoner asserts that he was denied access to the courts and seeks a

remedy for a lost opportunity to present a legal claim, he must show: (1) the loss of a

non-frivolous or arguable underlying claim; (2) the official acts that frustrated the litigation;

and (3) a remedy that may be awarded as recompense but that is not otherwise available

in a future suit.  Phillips v. Hust, 477 F.3d 1070, 1076 (9th Cir. 2007) (citing Christopher,

536 U.S. at 413-414, overruled on other grounds, Hust v. Phillips, 129 S.Ct. 1036 (2009)).

In this regard, Plaintiff states that he has been denied access to legal property and

legal materials and that his 602 grievances have been mishandled.  The Court finds that

the allegations in the Complaint do not state a claim for denial of access to the courts.

They do not describe any non-frivolous action that he has been prevented from pursuing.

Thus, the Court dismisses this claim.  Again, the Court will grant Plaintiff leave to amend,

but if Plaintiff is unable to allege additional facts showing that he was denied access to the

courts and thereby kept from filing a claim that would not have been frivolous, he will be well-served devoting his time to other claims discussed above.

### E.   Inmate Appeals Process

Plaintiff appears to be alleging that Defendants failed to respond properly to his inmate appeals. Defendants' actions in responding to Plaintiff's appeals alone cannot give rise to any claims for relief under Section 1983 for violation of due process.  "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986). Actions in reviewing a prisoner's administrative appeal cannot serve as the basis for liability under a Section 1983 action. Buckley, 997 F.2d at 495.

Thus, since he has neither a liberty interest  nor a substantive right to the procedures involved in inmate appeals, Plaintiff fails to state a claim in this regard. Because amendment of this claim would be futile, leave to amend will not be granted.

### F.   Equal Protection

Plaintiff claims his equal protection rights were violated.

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). An equal protection claim may be established by showing that the defendant intentionally discriminated against the plaintiff based on the plaintiff's membership in a protected class, Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003), Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Plaintiff has not alleged any facts demonstrating that he is being intentionally discriminated on the basis of his membership in a protected class or that he is being intentionally treated differently than other similarly situated inmates where there is no rational and legitimate state purpose for such different treatment. Therefore, Plaintiff fails to state a claim for relief for violation of his rights to equal protection. Plaintiff is granted leave to amend this claim IF he can truthfully allege facts showing that he was intentionally discriminated against based on his race, alienage, or other protected class or that he was treated differently than similarly situated with no rational basis for such disparate treatment.

## G. **Eighth Amendment**

Plaintiff vaguely suggests that he was subjected to cruel and unusual punishment when Defendant Hopkins took away Plaintiff's authorized and medically necessary shoes. Plaintiff says nothing else about this. Hopkins is not a named Defendant. This "claim" is unrelated to any other alleged cause of action. Its inclusion here violates Rule 18(a). Its

inclusion in an amended complaint would too.

**H.    Doe Defendants**

Plaintiff names Doe as a Defendant.  "As a general rule, the use of 'John Doe' to identify a defendant is not favored."  Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980).  "It is permissible to use Doe defendant designations in a complaint to refer to defendants whose names are unknown to plaintiff.  Although the use of Doe defendants is acceptable to withstand dismissal of a complaint at the initial review stage, using Doe defendants creates its own problem:  those persons cannot be served with process until they are identified by their real names."   Robinett v. Correctional Training Facility, 2010 WL 2867696, *4 (N.D. Cal. July 20, 2010).

Plaintiff is advised that Doe Defendant can not be served by the United States Marshal until he has identified him as an actual individual and amended his complaint to substitute the Defendant's actual name.  The burden remains on Plaintiff to promptly discover the full name of Doe Defendant; the Court will not undertake to investigate the names and identities of unnamed defendants.  Id.  The Court will grant Plaintiff leave to amend this claim and attempt to set forth sufficient identification.  Plaintiff should identify each Doe Defendant in the particular cause of action in which that Doe Defendant was involved.  Plaintiff must attribute actions to the Doe Defendant or the Court will dismiss them from the amended complaint.

**I.    Personal Participation and Supervisory Liability**

Plaintiff argues that many of the named Defendants are liable for the conduct of subordinates.  In fact, many of the named Defendants are not mentioned at all in the

26

factual allegations section of Plaintiff's Complaint and no action has been attributed to them.

Under Section 1983, Plaintiff must demonstrate that each named Defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). The Supreme Court has emphasized that the term "supervisory liability," loosely and commonly used by both courts and litigants alike, is a misnomer. Iqbal, 129 S.Ct. at 1949. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Id. at 1948. Rather, each government official, regardless of his or her title, is only liable for his or her own misconduct, and therefore, Plaintiff must demonstrate that each Defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. Id. at 1948-49.

When examining the issue of supervisor liability, it is clear that the supervisors are not subject to vicarious liability, but are liable only for their own conduct. Jeffers v. Gomez, 267 F.3d 895, 915 (9th Cir. 2001); Wesley v. Davis, 333 F.Supp.2d 888, 892 (C.D.Cal. 2004). In order to establish liability against a supervisor, a plaintiff must allege facts demonstrating (1) personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. Jeffers, 267 F.3d at 915; Wesley, 333 F.Supp.2d at 892. The sufficient causal connection may be shown by evidence that the supervisor implemented a policy so deficient that the policy itself is a repudiation of constitutional rights. Wesley, 333 F.Supp.2d at 892 (internal quotations omitted). However, an individual's general responsibility for supervising the operations of a prison is insufficient to establish personal

27

involvement.  Id. (internal quotations omitted).

Supervisor liability under Section 1983 is a form of direct liability.  Munoz v. Kolender, 208 F.Supp.2d 1125, 1149 (S.D.Cal. 2002).  Under direct liability, Plaintiff must show that Defendant breached a duty to him which was the proximate cause of his injury. Id.  "'The requisite causal connection can be established . . . by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'"  Id. (quoting Johnson v. Duffy, 588 F.2d 740, 743-744 (9th Cir. 1978)).

It is impossible to determine which Defendants named in the Complaint are named solely in their supervisory capacity.  Best the Court can discern, it appears that at least half of the named Defendants did not actually participate in the allegedly wrongful acts but were merely supervisors of the Defendants that committed the acts.  In his amended complaint, Plaintiff must attribute personal action to each and every named Defendant and should omit any Defendant named solely because he was another person's supervisor.  If Plaintiff cannot allege any particular action taken by a Defendant, he should not include that person in the amended complaint.  If Plaintiff fails to heed this warning, he risks having his entire case dismissed for violating Rules 8(a) and 18(a).

**J.     State Law**

Plaintiff claims violations of California Civil Code Section 51.  In support of this claim, Plaintiff states that "listed/named Defendants by there actions subjected [him] to emotional distress."

California's Tort Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims

28

Board, formerly known as the State Board of Control, no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2. Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit. State v. Superior Court of Kings County (Bodde), 90 P.3d 116, 123 (Cal. 2004); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). To state a tort claim against a public employee, a plaintiff must allege compliance with the Tort Claims Act. State v. Superior Court, 90 P.3d at 123; Mangold, 67 F.3d at 1477; Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988).

Here, Plaintiff fails to allege compliance with the Tort Claims Act, and thus fails to state any cognizable state law claims. Plaintiff also fails to specify what actions and which Defendants caused him emotional distress. The Court will give Plaintiff leave to amend this claim, but advises it will be futile for him to do so unless he can show that he complied with the Tort Claims Act by presenting a written claim within six months of the alleged wrongdoing.

**V.   CONCLUSION AND ORDER**

The Court finds that Plaintiff's Complaint violates Rules 8(a) and 18(a) and, thus, dismissal is appropriate. However, because it appears that Plaintiff may be able to amend at least some of his claims to cure the deficiencies identified by the Court in this Order, the Court will grant Plaintiff leave to file a Second Amended Complaint. **Plaintiff must carefully read this Screening Order and carefully follow the directives herein.** The Court will not tolerate another rambling, narrative chronology nor will the court parse through over forty pages of allegations to pick out a few causes of action that might support

relief for Plaintiff. In short, a Second Amended Complaint that resembles the First Amended Complaint and ignores the Courts instructions and directions here likely will be dismissed without leave to amend even if buried somewhere within it there might be potentially viable causes of action. Plaintiff should focus himself and the Court only on those potentially viable causes of action.

Finally, Plaintiff is advised that an amended complaint supercedes the original complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 220. Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing to London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

Based on the foregoing, it is HEREBY ORDERED that:

1.   The Clerk's Office shall send Plaintiff a civil rights complaint form;

2.   Within thirty (30) days from the date of service of this order, Plaintiff must file an amended complaint curing the deficiencies identified by the Court in this order and captioned "Second Amended Complaint" referring to the case number 1:04-cv-5787-LJO-MJS (PC); and

3.   If Plaintiff fails to comply with this order, this action will be dismissed for

///

///

///

///

///

30

failure to obey a court order.


IT IS SO ORDERED.


Dated:    February 4, 2011            /s/ *Michael J. Seng*
ci4d6                          UNITED STATES MAGISTRATE JUDGE